UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

1:05-cr-10081-MLW-ALL

UNITED STATES OF AMERICA

v.

ALEX S. NEWMAN

## AFFIDAVIT OF COUNSEL IN SUPPORT OF
## DEFENDANT'S MOTION TO CONTINUE TRIAL DATE

I, Juliane Balliro, hereby swear and aver as follows:

1. I represent the Defendant, Alex Newman in the above-referenced matter.

2. I filed my appearance in this case on or about April 25, 2005.

3. Following my appearance, I attempted to locate various bank statements that encompassed the period included in the indictment as I believed those statements were relevant to Mr. Newman's defense of this matter.

4. I was informed that, following the termination of the Defendant's employment and prior to his original indictment in New Hampshire, the Defendant's employer, Boston Fitness, was acquired by another fitness enterprise, Bally, and that as a result, the whereabouts of the records could not be determined.

5. Mr. Kinsella subsequently confirmed that he had no knowledge of the whereabouts of the bank records, but put me in touch with Todd & Weld, a law firm representing Bally so that I might attempt to locate the missing bank records.

6. I was able, through Todd & Weld, to identify a storage facility in Lowell, MA as a facility that might contain the records. I was able to make arrangements to visit that facility and did so this fall.

7. Although the storage facility in Lowell did contain bank records, the records for the period encompassed by the indictment were not located in that facility. As a result, I made further inquiry of Todd & Weld in an effort to determine whether any other storage facility existed that might contain the records.

8. On December 22, 2005 I received a communication from an employee of Todd & Weld, enclosing an informal index of the contents of a storage facility in Woburn. The index indicated that the missing bank records might be located in that facility. I was instructed to contact attorney Stephen Rider to make arrangements to visit that facility.

9. I was unable to reach Mr. Rider and he did not return my calls.

10. On or about December 30, 2005 I received an urgent message from Mr. Kinsella informing me that he had located four boxes in his office that appeared to contain the missing bank records. I was out of state at the time and did not get the message until January 3, 2006.

11. I spoke with Mr. Kinsella upon my return from vacation, on January 3, 2006. Mr. Kinsella was able to make arrangements through the Defendant's former employer to visit the Woburn facility and deliver the bank records to me on January 5, 2006. I received the bank records on the afternoon of January 5, 2006.

12. On Wednesday, January 4, 2006, Mr. Kinsella advised me that he had just learned that the Woburn storage facility also contained some computer equipment that might have been used at the office location where the defendant formerly worked. It was not known whether any

of the computers in the facility were, in fact, the computer used by the defendant during the course of his employment.

13. Shortly after filing my appearance, I attempted to locate the whereabouts of the Defendant's work computer as it was my belief that the computer contained evidence exculpatory of the Defendant. I was informed that the contents of the office location where the Defendant worked had been moved repeatedly and the location, indeed the existence of the computer, could not be determined. The computers were not located at the Lowell warehouse facility.

14. Mr. Kinsella and I conducted a search of the Woburn facility on Thursday, January 5, 2006. We discovered three computer hard drives (CPU's) and a file server at that location. I am now in physical possession of that computer equipment. It is not known whether any of those computers are, in fact, the computer used by the Defendant.

15. While at the facility, we also learned that additional computer equipment, which may include the Defendant's computer, may be located at yet another facility in Woburn. Mr. Kinsella and I made efforts to visit that facility on January 5, 2006 but were unable to make the arrangements to do so.

16. As a result, I still do not know whether I am in possession of Mr. Newman's computer or how quickly I can determine whether the computer does or does not exist.

17. I have been in contact with Kroll On-Track, an expert service in the area of computer forensics, in an effort to obtain a forensically sound duplicate of the data contained on the computer drives currently in my possession.

18. I have been able to confirm that duplicates of the data contained on the computers can be made on Monday January, 9, 2006 and that I will be in a position shortly thereafter to determine whether the data contained on the computers is the data I have been looking for.

19. I am attempting to make arrangements to view the other Woburn facility before Monday so that copies of any computers retrieved from that facility may also be made on Monday.

20. If I am able to obtain copies of computer data by the January 11, 2006, it is my belief that I can still be ready to try this case during the week on January 23, 2006. However, I am unable to determine at this time, whether this is possible.

SIGNED AND SWORN TO this 6th day of January, 2006.

_____/s/ Juliane Balliro_____
Juliane Balliro